UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Kenneth P. Saalfrank

     v.                          Civil No. 08-cv-46-JL
                                 Opinion No. 2009 DNH 162
Town of Alton *et al.*

**MEMORANDUM ORDER**

This is the latest discovery dispute in this civil rights
action.  Kenneth P. Saalfrank has sued, among others, the Town of
Alton, its police department, and a number of its current and
former officers, claiming "a prolonged series of unfounded
searches, seizures, arrests, and prosecutions" in violation of
his rights under the federal and state constitutions and at
common law.  These "Alton defendants" move to compel Saalfrank to
provide documents and other information in response to a number
of their document requests.[1]  Saalfrank has resisted these
requests on the grounds that the information is irrelevant and
that some of it is privileged or not within his possession,
custody, or control.

This court has subject-matter jurisdiction under 28 U.S.C.
§§ 1331 (federal question) and 1367 (supplemental jurisdiction).

---

[1]Another current Alton police officer named as a defendant,
Tyler Hackett, is represented by different counsel and has not
joined in the motion to compel.  Nor have the other defendants,
who are unaffiliated with the Town of Alton.

As fully explained <u>infra</u>, the court denies the Alton defendants'
motion to compel.  Much of the material sought is protected by
either the physician-patient or attorney-client privilege, and
the Alton defendants have failed to show that Saalfrank has
waived those privileges; the balance of the information is either
irrelevant or not within his possession, custody, or control.

## I.    **Background**

Among other causes of action, Saalfrank brings several
state-law malicious prosecution claims against Alton, its police
department, and one or more of its officers, each arising out of
a different criminal charge which was ultimately dismissed or of
which he was acquitted.  In support of each claim, Saalfrank
alleges that the defendants in question "caused [him] severe
emotional distress and damaged his reputation and standing in the
community."  Another count of Saalfrank's complaint asserts
"state law claims for emotional distress" against all the
defendants because they "intentionally took actions that they
knew or should have known would cause such distress to" him.  One
more count asserts a "state law claim for conspiracy to inflict
emotional distress" between a captain in the police department
and Saalfrank's ex-wife--both also named as defendants here--who,

Saalfrank alleges, began an adulterous affair in late 2002 which motivated many of the defendants' complained-of actions.

Saalfrank further alleges that the "[d]efendants' violations of [his] constitutional rights have caused extensive and lasting damage to his emotional, physical, and societal well being."  At his deposition, he testified that, while he could not recall having visited any "mental-health doctors" or counselors (other than one court-ordered evaluation) since the events giving rise to this lawsuit, he has discussed his "stress and anxiety" with "family doctors and doctors [he] see[s] on a somewhat regular basis."  When asked whether he had talked to a particular doctor about that subject, though, Saalfrank responded, "I believe that's between my doctor and myself."  Saalfrank's counsel has nevertheless made his medical records available for review by the Alton defendants' counsel, subject to an existing protective order and without waiving any privilege or relevancy objection.

Saalfrank also testified that he "fear[s] for his life" and "hide[s]" because of the defendants' actions.  In response to a question about how his claimed "fear of going out" of his house has "impacted [his] ability to work," Saalfrank stated, "Try to go get a job with a record that they have given me" as a result of the charges underlying his malicious prosecution claims.  But Saalfrank noted that he is "also disabled and [he] can't work on

a daily basis" as a result of a workplace accident in 2003, which resulted in what appear to be ongoing worker's compensation payments.  And in Saalfrank's answers to the Alton defendants' interrogatories, he stated "he has no damage claim for loss of income" or for "loss of future earning capacity," as well as that he "did not receive medical treatment for any injury for which relief is sought" and that he has not received [S]ocial [S]ecurity, worker's compensation, or other benefits "in connection with any of [his] claims for relief."

Saalfrank says that, after learning of a May 2007 warrant for his arrest on a simple assault charge--a charge giving rise to one of his malicious prosecution claims--he voluntarily surrendered at the Alton Police Department.  He was then immediately taken to the Belknap County House of Corrections, where he remained until his release on bail thirteen days later. He claims that, during his detention, he was suffering from "severe and debilitating pain in his neck and back" from a pre-existing injury, unconnected to the defendants' alleged actions. Saalfrank testified that, as a result of this injury, he had been prescribed a number of drugs, including a sleep aid, a muscle relaxant, and a pain reliever.  He also testified, in response to a question from the Alton defendants' counsel, that the defendants' complained-of conduct made his symptoms "worse at

4

times," but then stated, "I don't think that's what we're
claiming" in this lawsuit.

Before turning himself in, Saalfrank had spoken with an
attorney from the public defender's office, Melissa Penson.
Saalfrank testified at his deposition that Penson told him to
bring these medications with him when he surrendered, which he
did.  Nevertheless, Saalfrank was not allowed access to the drugs
while detained:  he claims that when he asked to see a doctor, he
was placed in the "squalid" conditions of solitary confinement
for a day, and that when he finally saw the doctor several days
later, he was told he did not need the medications.  As a result,
Saalfrank alleges, he suffered "excruciating pain and discomfort"
and "uniquely painful symptoms of withdrawal from his
medications."  Saalfrank has brought a claim against the Belknap
County Department of Corrections for violating his right to due
process under the Fourteenth Amendment by "retaliating against
[him] for his lawful request for medical attention."[2]

---

[2]Saalfrank has not maintained a claim against the Department
of Corrections for violating his right to due process by
deliberate indifference to his serious medical needs.  See, e.g.,
Mahan v. Plymouth County House of Corrs., 64 F.3d 14, 17 (1st
Cir. 1995).  He had brought that claim against two physicians
allegedly responsible for treating him while in the jail, but has
since voluntarily dismissed them from the case without prejudice.

Saalfrank attributes the length of his detention in Belknap County to the arresting officer's failure to present him to the Laconia District Court within 24 hours as required by N.H. Rev. Stat. Ann. § 594:20-a, I, or to notify the court of Saalfrank's status as a probationer as required by N.H. Rev. Stat. Ann. § 597:2, V(c).[3]  These omissions form the basis of claims against the officer, Alton, and the police department for violations of Saalfrank's right to due process under the federal and state constitutions, which seek "damage[s] in an amount to be proven at trial" without further specification.  At his deposition, Saalfrank suggested that he continues to experience emotional distress from his time in jail, as well as the rest of the defendants' actions.

Saalfrank testified that he did not ask to speak to Penson, his attorney, during his detention, but also said that he saw her "once or twice" during that period.  He also referenced "words [he] had" with Penson--after the charge leading to his detention in Belknap County was dropped--"that the 12 days spent there were for nothing," but later explained, when asked if he had "complain[ed] to her at all about not doing anything while [he]

_____

[3]It is unclear, from the portions of Saalfrank's deposition transcript submitted to the court, what charge he was on probation for at that point.

6

spent 12 or 13 days in the house of correction," that "[s]he tried.  It seemed like her hands were tied."

## II.  <u>Analysis</u>

"Parties may obtain discovery of any nonprivileged matter that is relevant to any party's claim or defense," and, in this sense, "[r]elevant matter need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  As noted at the outset, Saalfrank has resisted producing the sought-after information principally on the grounds that it is irrelevant or privileged.  Rule 37(a) allows a party to "move for an order compelling disclosure or discovery," Fed. R. Civ. P. 37(a)(1), if, among other reasons, "a party fails to respond that inspection will be permitted . . . under Rule 34," Fed. R. Civ. P. 37(a)(3)(B)(iv), which provides for the production of documents for inspection and copying, Fed. R. Civ. P. 34(a).

In this court, however, "[t]he party seeking information in discovery over an adversary's objection has the burden of showing its relevance," <u>Caouette v. OfficeMax, Inc.</u>, 352 F. Supp. 2d 134, 136 (D.N.H. 2005) (citing cases), and, likewise, "the party seeking privileged information bears the burden of establishing that access to the information is required for the resolution of

a claim," <u>Emerson Elec. Co. v. Ouellette</u>, No. 96-364, 1998 WL
34088465, at *6 (D.N.H. May 12, 1998) (citing <u>Greater Newburyport</u>
<u>Clamshell Alliance v. Pub. Serv. Co. of N.H.</u>, 838 F.2d 13, 20
(1st Cir. 1998)).  As explained fully <u>infra</u>, the Alton defendants
have not sustained these burdens as to any of the information
they seek to compel from Saalfrank.  He has not waived the
privilege protecting his communications with his physicians or
attorneys, either by mentioning them at his deposition or by
putting them at issue here, and the balance of his employment and
benefit history is also irrelevant.

Before analyzing the issues raised by the Alton defendants'
motion, however, the court must address a significant problem
with the way those issues have been presented.  As Saalfrank
points out, the motion fails to comply with Local Rule 37.1,
which requires that "[a]ny discovery motion filed pursuant to
Fed. R. Civ. P. . . . 37 shall include, in the motion itself or
in an attached memorandum, a verbatim recitation of each . . .
request, answer, response, and objection, or copy of the actual
discovery document which is the subject of the motion."  While
this court does not invariably deny motions for ignoring L.R.
37.1, <u>see</u>, <u>e.g.</u>, <u>Reid v. Simmons</u>, No. 89-152, slip op. at 10-12 &
n.4 (D.N.H. Mar. 26, 1997) (directing pro se litigant to Rule
37.1 but granting his non-compliant motion anyway), and will not

do so here, the court is nevertheless concerned about the Alton defendants' disregard of it in this case.

When the Alton defendants' counsel wrote to Saalfrank's counsel requesting, inter alia, the information now sought in the motion to compel, Saalfrank's counsel responded, also in writing, by pointing out that "there are no injuries claimed in this case for which Mr. Saalfrank sought or received medical care" and that he "has no claim in this case for loss of income" or "that the actions of the defendants caused or contributed to any disability."[4] Saalfrank's counsel also noted that he had nevertheless made Saalfrank's "medical records available, subject to the . . . protective order." By omitting any reference to these responses from their motion to compel, the Alton defendants left the misimpressions that Saalfrank had received medical care as a result of the defendants' conduct and that he was seeking to recover for those expenses, as well as for lost income or earning capacity, in this action, and that Saalfrank had flatly refused to provide counsel for the Alton defendants with any access to his medical records.[5]

------

[4]As discussed infra, Saalfrank had previously stated as much in his answers to the Alton defendants' interrogatories.

[5]Omitting the requests and responses also concealed the fact that the requests were not made by way of a formal document request under Rule 34, but by letter. Though Rule 34 does not,

This court would ordinarily attribute such an omission to simple inadvertence.  Here, however, just after the Alton defendants' counsel filed the motion, Saalfrank's counsel pointed out to her in an e-mail that the motion failed to comply with L.R. 37.1.  Saalfrank's counsel advised, "I can certainly raise this via a motion to strike, but I thought it would make more sense for you either to amend the motion, or withdraw it and refile."  Counsel for the Alton defendants responded, "I do not think a motion to strike or refilling [*sic*] is necessary . . . .  The purpose of the rule is to clearly define for the court the discovery dispute.  I believe we have done that and

---

on its face, require that a request for production take any particular form, a number of courts have refused to treat a letter as sufficient.  <u>See</u>, <u>e.g.</u>, <u>Garrison v. Dutcher</u>, No. 07-642, 2008 WL 938159, at *2 (W.D. Mich. Apr. 7, 2008); <u>James v. Wash Depot Holdings, Inc.</u>, 240 F.R.D. 693, 694-95 (S.D. Fla. 2006); <u>Suid v. Cigna Corp.</u>, 203 F.R.D. 227, 228-29 (D.V.I. 2001); <u>Sithon Mar. Co. v. Holiday Mansion</u>, No. 96-2262, 1998 WL 182785, at *2 (D. Kan. Apr. 10, 1998); <u>Schwartz v. Mktg. Publ'g Co.</u>, 153 F.R.D. 16, 21 (D. Conn. 1994).  Nevertheless, as the Alton defendants note, at least one court has called the distinction between a formal document request and a letter one of "form over substance," citing the widespread practice of "less formal methods for making discovery requests."  <u>Armamburu v. Healthcare Fin. Servs., Inc.</u>, No. 02-6535, 2007 WL 2020181, at *3 (E.D.N.Y. Jul. 6, 2007).  While this point need not be decided here, since the Alton defendants' motion to compel fails on its merits anyway, it is worth nothing that "[i]t is far easier and quicker to make a formal document request pursuant to Rule 34 than it is to construct and articulate an argument why an informal letter should be treated as a Rule 34 request so as to enable it to be enforced under Rule 37."  <u>Schwartz</u>, 153 F.R.D. at 21.

therefore fulfilled the rule's intended purpose."  Counsel for
the Alton defendants concluded, "If you feel it is necessary to
play games with discovery, instead of presenting the issue to the
court in a manner that will allow for expeditious resolution, I
can't do anything about that."

    The court disagrees with this characterization of L.R. 37.1.
While the rule does serve "to clearly define for the court the
discovery dispute," it also ensures the accuracy of that
definition.  As just explained, the Alton defendants' motion
falls short of that mark.  Furthermore, regardless of the
"purpose" of L.R. 37.1, its requirements are crystal clear, as is
the fact that the Alton defendants did not comply with them.  So
their counsel's refusal to correct her noncompliance (which could
have been accomplished easily, by electronically filing the
discovery requests and responses as addenda to the motion) comes
closer to "gamesmanship" than what Saalfrank's counsel did by
suggesting to the Alton defendants' counsel that she should
comply with the rule.  Intentionally disregarding the Local Rules
during the balance of this litigation will result in the denial
of relief or other appropriate sanctions.

### A.    Saalfrank's medical records

The Alton defendants want all of Saalfrank's "medical records from January 1, 2002 to the present regarding any medical or mental health care or treatment."  At the outset, this request appears moot in light of Saalfrank's counsel's representation that he has "permitted defendant's counsel--without waiving any objections or privileges and subject to the Attorney's Eyes Only provisions of the protective order--to inspect his medical records."  The Alton defendants do not dispute this representation, or even acknowledge it in their filings.[6]

In any event, the Alton defendants have not carried their burden to overcome the privilege that protects most, if not all, of the medical information they seek.  New Hampshire law places "confidential relations and communications" between a patient and either a licensed "physician or surgeon" or "any person licensed under provisions" of N.H. Rev. Stat. Ann. ch. 330-A, regulating "mental health practice," id. § 330-A:1, "on the same basis as

_____

[6]The subject was discussed in two sentences of the draft version of the motion to compel supplied to Saalfrank's counsel prior to filing, which complain that he "has not confirmed that the records he provided are complete or explained the nature of the information redacted," but those sentences were deleted from the final version of the motion filed with the court.

those provided by law between attorney and client."[7]   N.H. Rev.

---

[7]Under Rule 501 of the Federal Rules of Evidence, privilege "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light or reason and experience," i.e., federal, as opposed to state, law. See Fashion House, Inc. v. K mart Corp., 892 F.2d 1076, 1095 n.11 (1st Cir. 1989).   "However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege . . . shall be determined in accordance with State law."   Fed. R. Evid. 501.   While this provision requires the application of state privilege law in diversity cases, see, e.g., Fashion House, 892 F.2d at 1095 n.11, choice of privilege law in a case like this one invoking federal question jurisdiction as to some claims and supplemental jurisdiction as to others can present analytical difficulties, at least where there is a conflict between federal and state law, see 2 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 5:9 (3d ed. 2008) (discussing various approaches to this problem).

Here, there is potentially a conflict between state and federal privilege law because, while federal law recognizes the psychotherapist-patient privilege, see Jaffee v. Redmond, 518 U.S. 1 (1996), it does not recognize the physician-patient privilege, which was unknown at common law, see, e.g., Skinner v. O'Mara, 2000 DNH 161, 5-6 (citing authority from various federal courts of appeals).   And Saalfrank, as noted in Part I, supra, testified that he recalled discussing his stress and anxiety only with "family doctors and doctors [he] see[s] on a somewhat regular basis," as opposed to psychotherapists.   To complicate matters further, there is disagreement over whether such communications--to a general practitioner about the patient's mental condition and such--nevertheless receive the protection of the psychotherapist-patient privilege under federal law.   Compare 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 504.05[1], at 504-15 (Joseph M. McLaughlin, ed., 2d ed. 1997) (arguing they should under a "subject-matter approach" to the privilege) with United States v. Witt, 542 F. Supp. 696, 698-99 (S.D.N.Y.) (refusing to apply the privilege, pre-Jaffee, to "the general practitioner, to whom one complains of stress" because "a general physician-patient privilege is not recognized"), aff'd without op., 697 F.2d 301 (2d Cir. 1982).

This court need decide neither whether federal privilege law applies nor, if so, whether it extends to the communications

Stat. Ann. § 329:26 (physician-patient privilege); § 330-A:32
(mental health practitioner-patient privilege).  A patient may
waive either privilege, though, "by putting the confidential
communications at issue by injecting the privileged material into
the case . . . such that the information is actually required for
resolution of the issue."  <u>Desclos v. S. N.H. Med. Ctr.</u>, 153 N.H.
607, 612 (2006) (psychotherapist privilege); <u>Nelson v. Lewis</u>, 130
N.H. 106, 109 (1987) (physician privilege).[8]

The Alton defendants argue that Saalfrank has waived the
privilege "by putting the severe nature of his mental condition
at issue and disclosing [at his deposition] that he has spoken to
his doctors about it."  But disclosing the fact that privileged
communications on a particular subject have occurred--without
disclosing anything else about the content of those
communications--does not waive a privilege.  <u>See</u>, <u>e.g.</u>, <u>Mitchell
v. Super. Ct.</u>, 691 P.2d 642, 647 (Cal. 1984); <u>Colorado v. Silva</u>,
782 P.2d 846, 850 (Colo. Ct. App. 1989); <u>Manley v. Nevada</u>, 979

---

between Saalfrank and any general practitioners, because both the
Alton defendants and Saalfrank argue the privilege issues under
state law.  The court takes this as a tacit agreement that state
law governs.  <u>See</u>, <u>e.g.</u>, <u>Guy v. Starwood Hotels & Resorts
Worldwide, Inc.</u>, 2005 DNH 126, 6 n.4.

[8]The parties do not distinguish between the psychotherapist
and physician privileges, <u>see</u> note 7, <u>supra</u>, so neither will the
court for the balance of this order.

P.2d 703, 707 (Nev. 1999); 1 Paul R. Rice, <u>Attorney-Client Privilege in the United States</u>, § 6:21 (2d ed. 1999).[9]  The Alton defendants have not shown that Saalfrank revealed anything more about his communications with his doctors about his mental state, so this aspect of their waiver argument is without merit.

Whether Saalfrank has put his mental condition, and therefore his communications with his physicians on that subject, "at issue" in this case is a potentially more difficult question. In <u>Desclos</u>, the New Hampshire Supreme Court noted that a patient "will impliedly waive the privilege by bringing a cause of action that requires use of the privileged material to prove the elements of the case," but held that "a damage claim for generic mental suffering that is incident to physical injury will not waive the psychotherapist-patient privilege because a resolution of the claim will not require any privileged information."  153 N.H. at 613-14.

The problem here is that Saalfrank's state-law claims for malicious prosecution and intentional infliction of emotional

---

[9]Though some of these authorities consider waiver of the attorney-client privilege only, New Hampshire law, as just discussed, protects physician-patient communications "on the same basis as those provided by law between attorney and client."

15

distress do not neatly fit either category.[10]  They do not allege

negligently inflicted emotional distress, which would clearly

operate as a waiver of the psychotherapist-patient privilege; but

nor do they allege emotional distress incident to physical

injury, which would clearly preserve the privilege (indeed,

Saalfrank has expressly disclaimed any such injuries).

Instead, Saalfrank alleges emotional distress from

intentional torts.  As the New Hampshire Supreme Court has

observed, it allowed "recovery for emotional damages without

requiring expert testimony" in at least three cases where the

damages "arose from direct physical injury and/or intentional

torts."  O'Donnell v. HCA Health Servs. of N.H., Inc., 152 N.H.

608, 611-12 (2005).  But none of those decisions involved a claim

for malicious prosecution or intentional infliction of emotional

distress.  Id. (citing In re Gronvaldt, 150 N.H. 551, 554 (2004)

(action for divorce based on mental anguish caused by physical

and verbal abuse); Silva v. Warden, N.H. State Prison, 150 N.H.

372, 374-75 (2003) (action for battery); Fischer v. Hooper, 143

---

[10]Consistent with Saalfrank's position that he has alleged
only "generic mental suffering," the court has treated the count
of third amended complaint ambiguously entitled "state-law claims
for emotional distress" as an intentional infliction of emotional
distress claim, rather than a negligent infliction of emotional
distress claim--which, as Desclos holds, asserts more than
"generic mental suffering" and therefore amounts to an implicit
waiver of the psychotherapist-patient privilege.

N.H. 585, 592 (1999) (action for invasion of privacy)).

Moreover, the state supreme court has declined to decide "whether

proof of physical manifestations is a prerequisite for a finding

of severe emotional distress" necessary to support a claim for

intentional infliction of emotional distress.  Morancy v.

Morancy, 134 N.H. 493, 496 (1991).

It is an open question, then, whether New Hampshire law

requires expert testimony of physically manifested emotional

distress to recover for malicious prosecution or intentional

infliction of emotional distress.  But this court need not

attempt to answer the question now.  The Alton defendants do not

argue that Saalfrank's state-law intentional tort claims, by

their nature, necessitate expert medical testimony and therefore

amount to a waiver of his psychotherapist-patient privilege.

They come at the waiver argument from a different angle, arguing

that the severity of Saalfrank's claimed emotional distress--his

testimony that he lives in fear for his life and has gone into

hiding as a result of their actions--exceeds the "generic mental

suffering" that preserves the privilege.  This argument

misunderstands Desclos.

It is true that Desclos defined "generic mental suffering"

in this sense as "suffering that is in the common experience of

jurors, does not depend upon expert evidence, and does not exceed

17

the kind of suffering that an ordinary person would experience in similar circumstances." 153 N.H. at 614. But this court does not understand the reference to mental suffering "that does not exceed the kind of suffering that an ordinary person would experience in similar circumstances" to premise the waiver of the psychotherapist-patient privilege on a plaintiff's subjective characterization of his mental state--nor, for that matter, on a court's judgment that the plaintiff's suffering exceeds what an ordinary person would feel. The Alton defendants have provided no authority to that effect, and there is nothing in Desclos, or the case on which it principally relies, Missouri ex rel. Dean v. Cunningham, 182 S.W.3d 561 (Mo. 2006) (en banc), to support reading the phrase that way.

Instead, "the kind of suffering that an ordinary person would experience in similar circumstances," as its context suggests, refers to claims where "'it is within the ken of average lay people what mental and emotional harm might result'" and, therefore, no expert testimony is required. O'Donnell, 152 N.H. at 612 (quoting Silva, 150 N.H. at 375). The New Hampshire Supreme Court, again, has generally characterized such claims as those for physical injury or intentional torts, regardless of the seriousness of the resulting emotional injury. See id. So it is the nature of the defendant's alleged conduct, rather than the

18

severity of the plaintiff's alleged damages, that determines whether mental suffering is "generic" and thus whether the claim at issue waives any psychotherapist-patient privilege.  See Dean, 182 S.W.3d at 567-68.  Because the court rejects the Alton defendants' argument that, by claiming unusually serious emotional distress, Saalfrank has waived his psychotherapist-patient privilege, their motion to compel disclosure of Saalfrank's medical records is denied.[11]

Nevertheless, Saalfrank may wish to reconsider his position that he will not waive the privilege covering any communications with his doctors about the effects of the defendants' conduct on his physical and mental well-being.  If this court ultimately rules that New Hampshire law demands such proof to recover for emotional distress occasioned by malicious prosecution or otherwise intentionally inflicted (a point on which it expresses

---

[11]The Alton defendants have asked for "[a]ll of [Saalfrank's] medical records from January 1, 2002 to the present."  The "records" may, of course, contain information aside from privileged communications between Saalfrank and his providers; as suggested supra, "[f]acts regarding the very occurrence of psychotherapy, such as the dates of treatment, are not privileged." Vanderbilt v. Town of Chilmark, 174 F.R.D. 225, 230 (D. Mass. 1997).  The Alton defendants, however, have not moved for a narrower disclosure, but "[a]ll records," which is relief the court cannot grant without violating the privilege (putting aside the fact that their counsel has presumably learned the dates of Saalfrank's treatment and the like from the access she has already been provided).

no view in this order), then Saalfrank's refusal to waive the privilege will "prevent[] [him] from using the privileged information to establish the elements of [his] case."[12]  Desclos, 153 N.H. at 612.  Unless and until this court makes such a ruling, however, the fact that Saalfrank has brought those claims has no effect on his psychotherapist-patient privilege.

### B.   Saalfrank's prior attorneys' files

The Alton defendants ask this court to compel Saalfrank to provide a "signed authorization" allowing Melissa Penson, the attorney who defended him against the May 2007 assault charge that resulted in his thirteen-day detention in Belknap County, "for the release of [his] complete file."  The Alton defendants also want the "complete worker's compensation file" from attorney Jerry O'Neill, who represented Saalfrank in securing worker's compensation benefits after he suffered his on-the-job injury in 2003.  Under New Hampshire law, "'[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of

---

[12]The same may be true of Saalfrank's claim that he suffered "pain and discomfort" and "symptoms of withdrawal" as a result of spending thirteen days in Belknap County without his prescription medications.  Because the Alton defendants do not argue that this allegation amounts to a waiver of the physician-patient privilege, however, the court need not decide that now.

facilitating the rendition of professional legal services to the client.'"  Livingston v. 18 Mile Point Drive, Ltd., 158 N.H. 619, 627 (2009) (quoting N.H. R. Evid. 502(b)).[13]

So, assuming this court has the power to compel Saalfrank to order Penson and O'Neill to release their files, but see infra Part II.D, that relief would not be appropriate unless the Alton defendants can show that Saalfrank has waived the attorney-client privilege protecting most, if not all, of those files.[14]  They have not made that showing.

As an initial matter, the Alton defendants do not even attempt to demonstrate how Saalfrank waived the privilege as to his communications with O'Neill.[15]  They do argue, as they do in attempting to circumvent Saalfrank's psychotherapist-patient privilege, that he has waived his attorney-client privilege

---

[13]Again, this court will assume that New Hampshire law applies, see note 7, supra, but there does not appear to be any conflict between the federal and state law of attorney-client privilege relevant here in any event.

[14]Like Saalfrank's medical records, his attorneys' files may contain some non-privileged matter, see note 11, supra, but the court need not consider that wrinkle in the absence of a narrower request by the Alton defendants--not to mention a "reasonable probability that the file contains [unprotected, relevant] information."  Bennett v. ITT Hartford Group, Inc., 150 N.H. 753, 761-62 (2004).

[15]The Alton defendants have also failed to show that Saalfrank's worker's compensation claim or award is relevant. See infra Part II.C.

21

either by disclosing his communications with Penson or making an issue of the quality of her representation.  But the only communications with Penson that Saalfrank disclosed at his deposition were that (1) she told him to bring his prescription medications with him when he was taken into custody in May 2007, and (2) he had "words" with her after the charge was dropped that the days he spent in Belknap County "were for nothing."

Under New Hampshire law, a privilege is waived if its holder "knowingly and voluntarily discloses or consents to disclosure of any significant part of the privileged matter."  N.H. R. Evid. 510.  Saalfrank's comments that Penson told him to bring his medication to jail and that he had "words" with her did not disclose a "significant part" of his privileged communications with her and therefore did amount to a waiver.[16]  See Manley, 979 P.2d at 705-07 (ruling that no waiver occurred when a client, in describing a call with his defense attorney, testified only that

---

[16]It is also not readily apparent, at least from Saalfrank's offhand references to these exchanges at his deposition, how either of them was "for the purpose of facilitating the rendition of professional legal services" so as to amount to a privileged attorney-client communication.  And disclosing communications with one's lawyer that are not privileged does not force the disclosure of any other communications that are.  See, e.g., Lorenz v. Valley Forge Ins. Co., 815 F.2d 1095, 1099 (7th Cir. 1987); Rice v. Honeywell Int'l, Inc., No. 05-330, 2007 WL 865687, at *2-*3 (E.D. Tex. Mar. 15, 2007); Alexander v. FBI, 192 F.R.D. 32, 35 (D.D.C. 2000); Duplan Corp. v. Deering Milliken, Inc., 397 F. Supp. 1146, 1191 (D.S.C. 1974); 2 Rice, supra, § 9:28.

the attorney told him not to say "anything about anything" when
he was taken into custody, that the lawyer was upset the client
had called him, and that the client did not disclose where he
was, because that testimony was not "wide enough in scope [or]
deep enough in substance to constitute a significant part of the
communication") (internal quotation marks omitted).  So the court
rejects this aspect of the Alton defendants' waiver argument.

     The Alton defendants also argue that Saalfrank waived his
attorney-client privilege because he "injected privileged
material related to the effectiveness of . . . Penson's
representation into this case when he testified that she
misinformed him with respect to when he could be expected to be
arraigned and failed to 'watch[] out for [his] rights.'"  That
argument gets both the facts and the law wrong.  Saalfrank did
not testify that Penson "misinformed him with respect to when he
could be expected to be arraigned;" he testified, in fact, that
"the police" did that.[17]  While he did testify that he and Penson

_____

     [17]Saalfrank was asked, "did you discuss with the police at
all the fact that if you're being arrested for a simple assault
that maybe bail would be appropriate?"  He responded, "That's why
I thought I was only going to be there for a day.  [I] [t]hought
I was going to get arraigned that day."  He was then asked, "when
you spoke with your lawyer and she told you to bring your meds,
did you ask how long you're going to be there?"  He responded,
"We thought I was going to be arraigned.  That's what I was under
the understanding [sic]" (emphasis added).

had words "[a]bout how an attorney, defense attorney, should be watching out for my rights," when he was then asked whether he "complain[ed] to her at all about not doing anything while [he] spent 12 or 13 days" in detention, he responded, "[s]he tried. It seemed like her hands were tied."  The Alton defendants are mistaken to suggest, then, that Saalfrank has tried to blame Penson for the allegedly unlawful duration of his stint in the Belknap County jail.

In any event, a client must do more than gripe about the quality of his attorney's representation in events underlying a lawsuit in order to put their communications at issue in that lawsuit, waiving the privilege.  "An 'at-issue' waiver of the attorney-client privilege is limited to circumstances in which the privilege-holder injects the privileged material itself into the case, such that the information is actually required for resolution of the issue."  Livingston, 158 N.H. at 627 (emphases added).  Saalfrank has not done that here:  instead, he claims that certain of the Alton defendants caused his prolonged detention, in violation of his constitutional right to due process, by failing to follow state laws requiring notice to the responsible court.  Saalfrank's communications with his criminal defense attorney are not "actually required" to resolve that claim.  See id. at 627-28 (upholding ruling that client had not

24

put his communications with his attorney at issue by calling him
to testify about his "actions on the plaintiff's behalf" in
conducting real estate transactions at the trial of a claim
against a third party arising out of those transactions).  The
Alton defendants' motion to compel production of Saalfrank's
former attorneys' files is denied.

### C.    Saalfrank's income, employment, and benefit history

The Alton defendants also seek all of Saalfrank's (1) "tax
returns and/or [Forms] W2s and 1099s for any income from January
1, 2002 to the present," (2) "applications submitted . . . for
jobs" during the same period, (3) "documentation related to any
social security disability claim" during the same period, and
(4) "medical records related to worker's compensation and/or
social security disability and all assessments related to any
disability."[18]  Despite the Alton defendants' insistence to the
contrary, none of that material is relevant to this case.

Saalfrank, in his interrogatory answers, has expressly
stated that he "has no damage claim for loss of income" or for
"loss of future earning capacity" and that he has not received

---

[18]The court assumes for purposes of this section that these
"medical records" are not protected by physician-patient
privilege.

social security, worker's compensation, or other benefits "in connection with any of [his] claims for relief."  Despite having received these responses before taking Saalfrank's deposition, counsel for the defendants nevertheless asked him a number of questions about his employment status and disability payments; in response to one such question, about whether his fear of going out as a result of the defendants' actions had affected his ability to work, Saalfrank stated, "Try to go get a job with a record that they have given me."  That does not change the fact, however, that Saalfrank has disavowed any claim for lost employment or earning capacity here, making the records in question irrelevant.  See Fed. R. Evid. 401 ("Relevant evidence means evidence having the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.") (internal quotation marks omitted).

Moreover, even if Saalfrank's single comment at his deposition placed that disavowal into doubt, his counsel reiterated it, without equivocation, in his correspondence with the Alton defendants' counsel preceding the motion to compel, even offering "to enter an appropriate stipulation to that effect."  The Alton defendants' motion to compel Saalfrank's earning, employment, and benefit information is denied.

### D.    Saalfrank's probation records

Finally, the Alton defendants ask this court to compel Saalfrank to provide them with a "signed authorization for release of all probation records from the New Hampshire Department of Corrections."  In light of his claim that certain of the Alton defendants failed to timely report his status as a probationer to the court, resulting in his lengthy detention in the Belknap County jail, Saalfrank does not object to producing his probation records on relevancy grounds.  Rather, he points out that the documents are not in his "possession, custody, or control" so as to obligate him to produce them under Rule 34 of the Federal Rules of Civil Procedure, and that he has no objection to the Alton defendants' securing his probation records from the Department of Corrections.

The Alton defendants do not dispute that the Department of Corrections, not Saalfrank, holds his "probation records."  They state that "[i]t appears a court order will be necessary to obtain that information," but they do not explain why.  The Alton defendants have not identified, and this court is not aware of, any provision of New Hampshire law generally exempting "probation records" from the access to governmental records enjoyed by all

citizens.  <u>See</u> N.H. Rev. Stat. Ann. § 91-A:4.[19]  Nor have they

identified any efforts on their part to obtain such records from

the Department of Corrections.

Moreover, Saalfrank's "probation records" would appear

relevant to this action only insofar as they show whether he was

in fact on probation upon his arrest in May 2007 as he alleges,

and whether the state district court was, contrary to what he

alleges, notified of that arrest.  That information would seem to

be on file with the state district court.[20]  The short of it is

that the Alton defendants have not demonstrated any basis for

this court to order Saalfrank to authorize the release of his

"probation records."  <u>See</u>, <u>e.g.</u>, <u>Clark v. Vega Wholesale Inc.</u>,

---

[19]Chapter 91-A exempts "files whose disclosure would
constitute an invasion of privacy" from the class of government
records available to the public, N.H. Rev. Stat. Ann. § 91-A:5,
IV, as does a Department of Corrections directive, N.H. Dep't of
Corrs., Statement No. 1.40, <u>Public Records and Public Access to
DOC Records</u> 2 (2008) (exempting "[i]nformation that would invade
the privacy of any person, including . . . probationers").  As a
general matter, a person's "probation records" may contain
information of this nature, such as records of drug testing or
psychological evaluations.  Again, however, <u>see</u> notes 11 & 14,
<u>supra</u>, the Alton defendants have not explained what they want
from Saalfrank's "probation records," so the court need not
consider this potential limitation at this time.

[20]The Alton defendants state, without further elaboration,
that Saalfrank's "probation records contain relevant information
regarding the reason for [his] detention and the resolution of
any probation violation"; that information would likewise seem to
be on file with the state district court or, failing that, the
Belknap County Department of Corrections (also a defendant here).

181 F.R.D. 470, 472-73 (D. Nev. 1998) (noting that courts sometimes compel a litigant to authorize a third party's release of documents, but only when it "is the most expeditious, efficient, or least expensive means of procuring information," not when the requesting party "can secure copies of the requested documents from the custodian of the records as readily as" the adverse party can).  Their motion for that relief is denied.

## III. <u>Conclusion</u>

For the foregoing reasons, the Alton defendants' motion to compel[21] is DENIED in its entirety.  Saalfrank's assented-to motion to extend various deadlines under the scheduling order and to continue the trial is GRANTED.[22]

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  October 27, 2009

cc:  All counsel of record

---

[21]Document no. 91.

[22]Document no. 99.

29