UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Kenneth P. Saalfrank

     v.                            Civil No. 08-cv-46-JL
                                       Opinion No. 2010 DNH 041

Town of Alton *et al.*

**OPINION AND ORDER**

A discovery dispute in this civil rights case resulted in the denial of a motion to compel and now requires the court to address the question of sanctions under the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 37(a)(5)(B).  Kenneth P. Saalfrank has sued, among others, the Town of Alton, its police department, and a number of its current and former officers, claiming "a prolonged series of unfounded searches, seizures, arrests, and prosecutions" in violation of his rights under the federal and state constitutions and at common law.  These "Alton defendants" moved to compel Saalfrank to produce a variety of information over his objections.  In a written order (the "Order"), this court denied the motion in its entirety, ruling that all of the information the Alton defendants sought was privileged, irrelevant, or not within Saalfrank's possession, custody, or control.

Saalfrank now moves to recover the reasonable expenses he incurred in successfully opposing the motion under Rule

37(a)(5)(B) of the Federal Rules of Civil Procedure, which mandates such an award unless it would be unjust or the motion was substantially justified.  <u>See</u> <u>infra</u> Part II.  This court, which has subject-matter jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction), ordered written filings from the parties and heard oral argument on this issue.[1]  Based on those submissions, the court grants Saalfrank's motion and awards him roughly half of the sum he has requested as his reasonable expenses.  The motion to compel was substantially justified in seeking only one narrow category of the several broad types of information it sought, and there are no other circumstances making an award of expenses unjust.

    In addition to defending themselves from sanctions on the merits, the Alton defendants have suggested that the Order denying the motion to compel exhibits a certain blindness to, or at least a lack of awareness of, "how things are done," and that the Order and any sanction award will have a chilling effect on legitimate discovery practices, at least those employed by defendants in civil rights cases.  Mindful of these concerns, the

---

    [1]Defendant Tyler Hackett, an Alton police officer who has retained separate counsel from the Alton defendants, also filed a response to Saalfrank's request for expenses, even though Hackett did not join in the motion to compel and therefore is not responsible for the payment of expenses under Rule 37(a)(5)(B).

court is mindful of those concerns, and addresses them <u>infra</u> at Parts III.B and IV.

I.   **Background**

The nature of Saalfrank's claims, insofar as they relate to the motion to compel, is discussed at length in the Order, 2009 DNH 162, 2-7, and need not be repeated here.  In short, Saalfrank alleges that the defendants' actions "caused [him] severe emotional distress and damaged his reputation and standing in the community" and "extensive and lasting damage to his emotional, physical, and societal well being."  But, as he stated in his interrogatory answers, Saalfrank makes no claim for loss of income or future earning capacity, nor did he receive medical treatment or any benefits (e.g., social security, worker's compensation) as a result of the defendants' alleged conduct.

Nevertheless, following Saalfrank's deposition, counsel for the Alton defendants wrote to counsel for Saalfrank asking him to produce, among other documents:  all of his medical records from January 2002 to present, including those "related to workers' compensation and assessment or percentage of disability"; all of his tax returns and related documents, and a list of all job applications he had made, for the same period; and "all documentation regarding social security disability claims."

Counsel for the Alton defendants also asked for "authorizations to obtain the records from" a number of attorneys who had previously counseled Saalfrank on various matters, including an attorney who had represented him in a workers' compensation appeal, Jerry O'Neil, and the public defender who had represented him on one of the charges connected to his claims against the Alton defendants, Melissa Penson.[2]  Counsel for the Alton defendants further requested "all probation records."

Saalfrank's counsel responded that information as to Saalfrank's earnings, employment history, and social security or workers' compensation benefits was irrelevant because he was making no claim for loss of income or that the defendants had caused him any disability.  Saalfrank's counsel further noted that, while there was also no claim that the defendants' actions had necessitated any medical care, he had already made Saalfrank's medical records available to the defendants subject to a protective order.  Saalfrank's counsel also objected to producing records from Saalfrank's former attorneys on grounds of privilege and relevance.

---

[2]Saalfrank claims that the Alton defendants violated his constitutional right to due process by failing to present him to the state district court within 24 hours of his arrest on this charge in May 2007, even though he was on probation at the time.

Counsel for the Alton defendants responded by sending Saalfrank's counsel a draft version of the motion to compel, which persisted in asking for all of the same information. Counsel for Saalfrank responded with largely the same objections, offering several times to enter into a "suitable" or "appropriate" stipulation that Saalfrank was not seeking relief for physical injury or lost income, reiterating that the medical records had already been provided, and noting that Saalfrank's probation records were held by the Department of Corrections rather than within his possession, custody, or control. The Alton defendants nevertheless filed the motion to compel without withdrawing any of their requests for this information or further discussing the issue with Saalfrank's counsel.[3]

Thus, the motion to compel sought a number of separately designated categories of information:

1.   All of the plaintiff's medical records from January 1, 2002 to the present regarding any and all medical or mental health care and treatment;

2.   All of the plaintiff's tax returns and/or W2s and 1099s for any income from January 1, 2002 to the

_____

[3]By the time they filed the motion to compel, the Alton defendants had withdrawn some of their other requests, including for certain information Saalfrank's counsel had agreed to provide, as well as for the files of two other attorneys who had previously represented Saalfrank (which Saalfrank had also objected to producing on grounds of relevance and privilege).

        present and a list of all applications submitted by the plaintiff for jobs from January 1, 2002 to present;

3.     A signed authorization to Attorney Jerry O'Neil for release of the plaintiff's complete worker's compensation file;

4.     All documentation related to any social security disability claim filed by the plaintiff from January 1, 2002 or a signed authorization to release same;

5.     All medical records related to worker's compensation and/or social security disability and all assessments relating to any disability;

6.     A signed authorization for release of all probation records from the New Hampshire Department of Corrections; and

7.     A signed authorization to Attorney Melissa Penson and the New Hampshire public defender's office for the release of the plaintiff's complete file including all information related to a probation violation and simple assault charge in May 2007.

In violation of Local Rule 37.1, the motion did not attach any of the requests and responses that had preceded it; though counsel for Saalfrank brought this to the attention of counsel for the Alton defendants just after the motion had been filed, they refused to refile or supplement the motion to bring it into compliance. Saalfrank filed a 14-page objection to the motion, largely repeating the arguments his counsel had made in response to the discovery requests, buttressed with citations to appropriate authority; a reply and a surreply followed. The court denied the motion in its entirety in the written Order.

## II.  **Applicable legal standard**

If a motion to compel is denied, the court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.  But the court must not order this payment if the motion was substantially justified or if other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(B).  A court must likewise award reasonable expenses to a party who succeeds on a motion to compel necessitated by another party's discovery objection that was not substantially justified.  See Fed. R. Civ. P. 37(a)(5)(A).

When it comes to motions to compel, then, "[t]he great operative principle of [Rule 37(a)(5)] is that the loser pays." 8A Charles Alan Wright et al., Federal Practice & Procedure § 2288, at 657-58 (2d ed. 1994).  The rule thus serves to "deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists."  Fed. R. Civ. P. 37(a)(4) advisory's committee's note (1970).

As used here and elsewhere in the rules, "[t]he term "'substantially justified' does not mean 'justified to a high degree, but only 'justified in substance or in the main--that is, justified to a degree that could satisfy a reasonable person.'"

7

Sheppard v. River Valley Fitness One, L.P., 428 F.3d 1, 12 (1st
Cir. 2005) (quoting Pierce v. Underwood, 487 U.S. 552, 565
(1988)).  The burden of showing substantial justification is on
the party facing the payment of expenses.  See 8A Wright, supra,
§ 2288, at 665; Rickels v. City of S. Bend, Ind., 33 F.3d 785,
787 (7th Cir. 1994); cf. Wilson v. Bradlees of New Eng., Inc.,
250 F.3d 10, 20-21 (1st Cir. 2001) (holding that a party facing
sanctions under Rule 37(c)(1) bears the burden of showing its
conduct was substantially justified).

## III. **Analysis**

### A.   **Whether the motion to compel was substantially justified**

The court will consider whether the motion was substantially
justified as to each of the categories of information it sought.

#### 1.   **Medical records**

In moving to compel Saalfrank's medical records, the
defendants Alton relied on his deposition testimony that "he
suffered ill effects as a result of withdrawal from certain
medication during his incarceration" in May 2007, that "the
defendants' conduct made his symptoms worse," and that "he spoke
to various doctors . . . about the stress and anxiety caused by
the defendants."  On its face, this argument shows the relevance
of some of Saalfrank's medical records, i.e., those connected to

the defendants' conduct.  But it does not address or even acknowledge that Saalfrank's counsel had already (a) provided the defendants' counsel with access to his medical records pursuant to a protective order and (b) offered to stipulate that Saalfrank was not claiming any damages for physical injury or medical expenses.  Nor does it explain why the medical records, even if they were relevant, would not be privileged.

In their reply, however, the Alton defendants asserted that Saalfrank had waived the privilege, based principally on his deposition testimony as to the serious effects of the defendants' conduct on his emotional state.  Because that account exceeded "'garden variety' emotional distress," the Alton defendants argued, Saalfrank had "put the severe nature of his mental condition at issue" and therefore effected a waiver of the psychologist-patient privilege under Desclos v. S. N.H. Medical Center, 153 N.H. 607 (2006).[4]

In its Order, this court acknowledged that Desclos--in delineating claims for "generic mental suffering" that require no

---

[4]It is true, as Saalfrank points out, that this court ordinarily disregards arguments raised for the first time in a reply memorandum.  See, e.g., Doe v. Friendfinder Network, Inc., 540 F. Supp. 2d 288, 303 n.16 (D.N.H. 2008).  Nevertheless, the court extensively considered the Alton defendants' Desclos-based argument in the Order, and in fairness to the Alton defendants will consider here whether the argument substantially justified the motion in part.

expert testimony and therefore do not effect any waiver of the
privilege--explained the phrase in part as "the kind of suffering
that an ordinary person would experience in similar
circumstances."  2009 DNH 162, 17-18 (quotation marks omitted).
But this court rejected the Alton defendants' argument, reasoning
that, under <u>Desclos</u>, "it is the nature of the defendant's alleged
conduct, rather than the severity of the plaintiff's alleged
damages, that determines whether mental suffering is 'generic'
and thus whether the claim at issue waives any psychotherapist-
patient privilege."  <u>Id.</u> at 18-19.

    The Alton defendants' position, then, had some support in
the literal language of <u>Desclos</u>, and was rejected only after a
close reading of that case in the context of other New Hampshire
Supreme Court decisions on emotional distress damages.  <u>See</u> <u>id.</u>
at 17-19.  The Alton defendants were substantially justified in
moving to compel Saalfrank to disclose his medical records
despite his claim of privilege--at least insofar as those medical
records reflected treatment for emotional distress connected to
the defendants' conduct (or a lack of such treatment).[5]

---

[5]Similarly, as the court noted in the Order, the Alton
defendants may have been substantially justified in moving to
compel Saalfrank's medical records insofar as they are relevant
to his claim that he suffered withdrawal symptoms when he was
deprived of his prescription drugs during his stint in jail in
May 2007.  But, putting aside the fact that the Alton defendants

But the Alton defendants' motion made a much further-ranging request for Saalfrank's medical records:  all of them, reflecting treatment for anything, from the start of 2002 to the present. The Alton defendants have never explained the relevance of, or attempted to overcome the privilege as to, this broad range of materials.  That omission is particularly glaring in light of the fact that, before they filed the motion, they had been provided access to Saalfrank's medical records, as well as offered a stipulation that he was not seeking damages for physical injury or medical expenses.  These overtures should have enabled the Alton defendants to narrow their request significantly or, at a minimum, to engage in further discussions with Saalfrank's counsel about this issue.  <u>See</u> Fed. R. Civ. P. 37(a)(1) (requiring that a party moving to compel certify to having conferred in good faith with the adverse party in an effort to obtain the discovery without court action).  The court rules that the Alton defendants' motion to compel was substantially justified in seeking Saalfrank's medical records, but only insofar as they reflected treatment for emotional distress connected to the defendants' conduct.

---

did not mention this point until their reply brief (and even that was just a passing reference), it could have justified the motion to compel only to that limited degree.

### 2.    Records of employment and disability benefits

In moving to compel Saalfrank's tax returns, earnings summaries, job applications, and records of social security disability or workers' compensation claims from the start of 2002 to the present, the Alton defendants relied solely on a moment in Saalfrank's deposition when, asked if the defendants' conduct impacted his ability to work by making him fearful of leaving his house, he said, "Try to go get a job with the record they have given me . . . .  Who is going to hire somebody like that?" Saalfrank testified in the same breath, however, that he is "also disabled and [he] can't work on a daily basis" as a result of a workplace accident in 2003, and had sworn in his interrogatory answers that "he has no damage claim for loss of income" or for "loss of future earning capacity."  And, again, when counsel for the Alton defendants nevertheless asked Saalfrank's counsel to produce his income, employment, and benefits information, counsel offered to stipulate to the absence of such a claim.

In the face of these repeated disavowals of a claim for loss of income or earning capacity, Saalfrank's lone statement at his deposition suggesting the defendants bore some of the blame for his inability to work did not furnish a substantial justification for moving to compel this information.  Indeed, neither the Alton defendants' motion itself nor their reply in support of it even

acknowledged the disavowals, let alone offered any argument why
Saalfrank's prior earnings and benefits were nevertheless
discoverable.[6]  They plainly were not.  See Ellis v. City of
N.Y., 243 F.R.D. 109, 112 (S.D.N.Y. 2007) (ruling that
plaintiff's tax returns were not discoverable in an action for
malicious prosecution without any claim for lost wages or "other
losses related to his income"); Bagnall v. Freeman Decorating
Co., 196 F.R.D. 329, 331-32 (N.D. Ill. 2000) (ruling that
plaintiff's social security disability and workers' compensation
benefits were not discoverable in a suit for job discrimination
on the basis of disability, except insofar as they showed he was
permanently disabled and therefore unqualified for the job at the
time of his discharge, which was relevant to his claim).

Hackett's filing on the substantial justification issue and
the Alton defendants' presentation at oral argument, however,
maintained that Saalfrank's employment, income, and benefit

_____

[6]As the court acknowledged at oral argument, the proffered
stipulation might have left the Alton defendants concerned that
Saalfrank could still use the fact that he does not regularly
work as proof of the severity of his emotional distress (as
distinguished from proof of a claim for lost earnings).  But that
was clearly not the basis for the motion to compel which, again,
did not so much as acknowledge the proffered stipulation.
Moreover, if the Alton defendants were in fact concerned about
the scope of the proffered stipulation, they were required to
make a good-faith effort at resolving that issue with Saalfrank's
counsel before moving to compel.  See Fed. R. Civ. P. 37(a)(1).

history was discoverable--despite the lack of a claim for lost
income or disability--because it impacts Saalfrank's credibility
as a witness in this case.  Hackett argues, for example, that
Saalfrank's tax returns would show "whether his statements under
oath during his deposition were truthful" in claiming that he has
not worked regularly since his on-the-job accident in 2003.
While "[d]iscovery is commonly allowed in which the discovering
party seeks information with which to impeach witnesses for the
opposition," 8 Wright, supra, § 2015, at 207, the sought-after
information would not be admissible to impeach Saalfrank.

 "It is well established that a party may not present
extrinsic evidence to impeach a witness on a collateral matter.
A matter is considered collateral if the matter itself is not
relevant to establish a fact of consequence, i.e., not relevant
for a purpose other than the mere contradiction of the in-court
testimony of the witness." United States v. Catalan-Roman, 585
F.3d 453, 468 (1st Cir. 2009) (quotation marks omitted).  Again,
because Saalfrank has no claim for lost income here, whether he
has been working or receiving disability payments since 2003 is
collateral, i.e., irrelevant for any purpose but to impeach his
credibility at trial (as Hackett's argument concedes).

 So, should Saalfrank testify at trial, as he did at his
deposition, that he has not been working or receiving those

14

benefits since 2003, the defendants could not use his tax filings or benefit history to disprove that testimony, because that would amount to the impermissible use of extrinsic evidence to impeach a witness on a collateral matter.[7]  See United States v. Beauchamp, 986 F.2d 1, 3 (1st Cir. 1993) (quotation marks and bracketing omitted).  It follows that such evidence is not admissible, and that the Alton defendants' request for it was therefore not "reasonably calculated to lead to the discovery of admissible evidence" under Rule 26(b)(1).[8]  The defendants' post hoc explanation for moving to compel Saalfrank's income,

---

[7]Of course, if Saalfrank testifies at trial in a way that "opens the door" to otherwise inadmissible evidence by misleading the jury or creating an unfair advantage, the analysis might be different.  But that possibility--and that is all it is at this point, see infra note 8--does not alter or create an exception to the rules of discovery.

[8]It should be noted that, even if such evidence were admissible to impeach Saalfrank, the Alton defendants would still have to show that their requests were reasonably calculated to lead to its discovery, i.e., "some factual basis for believing that impeaching evidence [would] be revealed by the discovery sought."  Lemanik, S.A. v. McKinley Allsopp, Inc., 125 F.R.D. 602, 610 (S.D.N.Y. 1989); see also 8 Wright, supra, § 2015, at 209-210.  To this point, the Alton defendants have never relied on anything but speculation to suggest that Saalfrank's income, employment, and benefit history would show that he was lying about not having worked or received benefits.  If they have anything to support that notion, they have never shared it with the court, despite a number of invitations to do so.  Rule 26(b)(1) does not permit "the party seeking disclosure to embark on examination of every statement ever made by a witness in the hope of unearthing a falsehood."  Davidson Pipe Co. v. Laventhol & Horwath, 120 F.R.D. 455, 463 (S.D.N.Y. 1988)

employment, and benefit history does not furnish a substantial justification for the motion.

### 3.    Files from Saalfrank's prior attorneys

The Alton defendants moved to compel the "complete file" from two of Saalfrank's former attorneys:  Jerry O'Neil, who represented Saalfrank in workers' compensation proceedings, and Melissa Penson, who defended Saalfrank on one of the charges giving rise to his malicious prosecution claims here.  In the motion, the Alton defendants argued that Saalfrank had waived the attorney-client privilege as to Penson "by disclosing the substance of selected conversations with [her] in [*sic*] deposition."  In their reply, the Alton defendants ventured the new argument that Saalfrank had waived the privilege because, at his deposition, he "claim[ed] that she failed to provide effective assistance and thereby injected his otherwise privileged communications with her into this case."  In the Order, the court rejected both of these arguments, and noted that the Alton defendants did "not even attempt to demonstrate how Saalfrank waived the privilege as to his communications with O'Neill [*sic*]."  Id. at 21 (footnote omitted).

In their filing on the substantial justification issue, the Alton defendants do not address their request for these

privileged materials (except to quote without elaboration from portions of Saalfrank's deposition which, as the court ruled in the Order, did not waive the attorney-client privilege).[9] Moreover, at oral argument, the Alton defendants essentially conceded that they had no substantial justification for moving to compel these materials.  The court agrees, based on the analysis set forth in the Order.  2009 DNH 162, 21-24.

### 4.   Saalfrank's probation records

As noted above, Saalfrank never objected to producing his probation records because they were irrelevant, but only because he did not have them.  The Alton defendants did not address that objection in their motion and, in their reply, devoted just one sentence to it:  "It appears a court order will be necessary to obtain that information."  Thus, as the court noted in the Order, the Alton defendants never identified "any provision of New

---

[9]Hackett suggests that both Penson's and O'Neil's files contain non-privileged materials.  He gives no clue as to what those materials might be, however, and as the court noted in the Order, it was incumbent upon the Alton defendants to show a "'reasonable probability that the file contains [unprotected, relevant] information.'"  2009 DNH 162, 21 n.14 (quoting Bennett v. ITT Hartford Group, Inc., 150 N.H. 753, 761-62 (2004)).  They never tried to do that (never backing down from their opening demand for the entire contents of both attorneys' files) and Hackett's post hoc speculation does not fill that gap.  Indeed, he concedes that the nonprivileged materials in O'Neil's file "will likely not relate to claims being made in this case."

Hampshire law generally exempting 'probation records' from the access to governmental records enjoyed by all citizens" under the state's right-to-know law.  2009 DNH 162, 28-29 (citing N.H. Rev. Stat. Ann. § 91-A:4).  Nor had they "identified any efforts on their part to obtain such records from the Department of Corrections."  Id. at 29.  Those shortcomings persist.  The Alton defendants' filing on the substantial justification issue does not address their request for Saalfrank's probation records.

    Hackett's filing, however, explains that asking Saalfrank to provide an authorization for the release of those records "is consistent with New Hampshire practice" under which, unlike "the practice in New York City or other more metropolitan areas," such authorizations are routinely provided so as to save opposing counsel the trouble of preparing and serving a subpoena for third-party records.  But that ignores the court's observation in the Order that neither a subpoena nor the requested authorization was necessary:  Saalfrank's probation records, at least insofar as they appear to be relevant here, should be publicly available, either via a right-to-know request to the Department of Corrections or a simple check of the records of the state district court where the probation was imposed.  Id. at 27-28 & n.20.  The Alton defendants were not substantially justified in

moving to compel Saalfrank to provide an authorization for his probation records.

## B.   Whether other circumstances make an award of expenses unjust

Rule 37(a)(5)(B) forbids an award of expenses incurred in responding to a discovery motion that was substantially justified, as well as where "circumstances make an award of expenses unjust."  While the Alton defendants do not specifically invoke this provision, they resist an award of expenses against them because "the request for the discovery was made in good faith; was not frivolous, abusive or harassing; and was a reasonable attempt to represent and defend clients within the discovery guidelines and ethical obligations to provide diligent, competent, and meritorious representation to clients" (footnotes omitted).  They made a similar point at oral argument, predicting that an award of expenses would have a "chilling effect" on the vigorous defense of civil rights actions in this court--in which, their counsel asserted, discovery of the kind they moved to compel here is "usually" sought.

First, the court need not, and does not, find that the Alton defendants' motion to compel amounted to a "bad faith" or

"abusive or harassing" tactic.[10]   By its terms, all Rule 37(a)(5)
requires for the payment of the losing party's reasonable
expenses is that the unsuccessful motion lack a substantial
justification and that other circumstances not render the award
of expenses unjust.

As just discussed at length, the Alton defendants have
failed to show a substantial justification for seeking to compel
all but one narrow category of the material sought by the motion;
indeed, they have not even tried to make that showing as to some
of the material.   Whether they nevertheless harbored only the

---

[10]Although the court finds no bad faith in connection with
the motion, both the breadth and nature of the information sought
by the motion and the tactics that accompanied it invite close
judicial scrutiny.   The Alton defendants moved to compel all of
Saalfrank's medical records, tax returns, employment records, job
applications, and benefits history for the past seven years.   And
they did so without making any meaningful response to Saalfrank's
counsel's detailed explanations as to why that information was
privileged or irrelevant or, as noted several times already, his
offer to stipulate away any claim for physical injury, medical
expenses, or lost income, despite Rule 37(a)(1).   "[A]s a general
principle, simply reiterating demands for production in a series
of e-mails probably does not meet the requirement that the
parties confer in good faith about discovery issues before
invoking judicial remedies."   Antonis v. Elecs. for Imaging,
Inc., No. 07-163, 2008 WL 169955, at *1 (D.N.H. Jan. 16, 2008).
Furthermore, the Alton defendants did not provide any of those
explanations to the court or otherwise refer to them in their
motion, despite Local Rule 37.1.   Rule 37(a)(5) exists to
discourage counsel from creating the expense of getting the court
involved in resolving discovery disputes that, with a good faith
effort, they could have resolved on their own.   See Rickels, 33
F.3d at 787.

best of intentions when they filed the motion has no bearing on
the fee-shifting analysis.  See Green v. Baca, 225 F.R.D. 612,
614 (C.D. Cal. 2005) (citing Marquis v. Chrysler Corp., 577 F.2d
624, 641-42 (9th Cir. 1978)).

Second, diligent representation, and even vigorous advocacy,
must stay within the strictures of the applicable rules.  Rule
26(b)(1) limits the scope of discovery to "any nonprivileged
matter that is relevant to any party's claim or defense."  The
Alton defendants' position that Saalfrank's income, employment,
and benefits records are relevant simply cannot be squared with
his repeated disavowals of any claim for lost earnings.  Their
refusal even to acknowledge those disavowals in their moving
papers seems to reflect the notion that they, rather than
Saalfrank, get to decide what claims he is making--or privileges
he has waived--based on what discovery they want from him.[11]

---

[11]Indeed, the impetus for the Alton defendants' quest for
this information seems to have been the fact that they asked him
questions about these subjects at his deposition, which he
answered--as he was required to do, since a deponent cannot be
instructed not to answer on the basis of irrelevance, see Fed. R.
Civ. P. 30(c)(2).  Under Rule 26(b)(1), however, the measure of
relevance is a party's claims or defenses (and, if good cause is
shown, the subject matter of the action, but the Alton defendants
have never attempted to show good cause).  It is not the
deposition testimony a party gives on unrelated subjects about
which opposing counsel nevertheless decides to ask him.  Yet the
Alton defendants continue to rely on the fact that Saalfrank
testified about his medical problems, receipt of a workers'
compensation settlement, and continued unemployment at his

That notion is mistaken.  Despite the Alton defendants'
insinuations to the contrary, a plaintiff may legitimately choose
to limit the kinds of damages he seeks in order to avoid
producing prejudicial or embarrassing information that would
otherwise be discoverable.  See Ipox v. EHC Fin. Servs., LLC, No.
07-5606, 2008 WL 4534366, at *3 (W.D. Wash. Oct. 7, 2008)
(observing that if a plaintiff "prefers to keep her mental health
a private matter, she may withdraw her request for emotional
damages" to foreclose discovery into that area).

Likewise, there is nothing in the Federal Rules of Civil
Procedure themselves to prevent a defendant from asking the
plaintiff to produce such information in discovery, in the hopes
that it will simply be turned over without a fight.  But if there
is a fight, and the defendant chooses to take it to court by
filing a motion to compel, the lack of a substantial
justification for doing so will result in the defendant's payment
of the plaintiff's reasonable expenses in opposing the motion.
In this way, Rule 37(a)(5) exerts a chilling effect, see Fed. R.
Civ. P. 37(a)(4) advisory committee's note (1970), but only on
unjustified motions to compel, as opposed to unjustified

---

deposition:  their filing on the substantial justification issue
consists largely of lengthy excerpts from Saalfrank's deposition
transcript.  That reliance is misplaced.

22

discovery requests.  There are no circumstances here making an award of expenses against the Alton defendants unjust.[12]

### C.   Calculating Saalfrank's expenses

In determining the "reasonable expenses incurred" in opposing an unjustified motion to compel under Rule 37(a)(5)(B), this court applies the "lodestar method" of calculating attorneys' fees:  multiplying the hours reasonably spent opposing the motion by the hourly rate prevailing in the community. Holder, 2007 DNH 89, 2 (citing Bogan v. City of Boston, 489 F.3d 417, 426 (1st Cir. 2007)); see also Enterasys Networks, Inc. v. DNPG, LLC, No. 04-209, 2006 WL 1644598, at *1 (D.N.H. June 12, 2006) (assessing fees expended in filing a motion to overcome an unjustified discovery objection).  The party seeking the expenses bears the burden of showing their reasonableness.  See Holder, 2007 DNH 89, 2; DNPG, 2006 WL 1644598, at *1.  Under the lodestar

---

[12]Such an award is also consistent with prior decisions of this court which, contrary to the Alton defendants' suggestion, has assessed expenses against parties for unjustifiably moving to compel on several occasions.  See Fritz v. Brown, 2009 WL 425840, at *1 (D.N.H. Feb. 18, 2009) (Muirhead, M.J.); Holder v. Gienapp, 2007 DNH 089, 5 (DiClerico, J.); see also Sheppard v. River Valley Fitness One, L.P., 2004 DNH 020, 15-16 (McAuliffe, C.J.) (awarding expenses under Rule 37(a)(5)(B) based on an unjustifiable motion for a protective order), aff'd in relevant part, 428 F.3d 1 (1st Cir. 2005).

method, "a court usually should begin with the attorneys'
contemporaneous billing records.  The court should then subtract
hours that are duplicative, unproductive or excessive and
multiply the hours billed by the prevailing attorney rate in the
community."  <u>Bogan</u>, 489 F.3d at 426 (citing <u>Gay Officers Action
League v. Puerto Rico</u>, 247 F.3d 288, 295 (1st Cir. 2001)).

### 1.    The reasonable number of hours

Saalfrank's counsel have submitted billing records showing
that they expended a total of 32.5 hours in responding to the
motion to compel, starting with their review of the draft version
of the motion forwarded by counsel for the Alton defendants and
concluding with finalizing and filing a surreply.  While the
majority of these hours were reasonably spent, the court finds
some of them duplicative, excessive, or precipitated by the one
part of the motion that was substantially justified.

First, both Robert Carey and Jeffrey Spear, two different
attorneys who are counsel of record to Saalfrank and who practice
at the same firm, spent time reviewing the drafts of both the
Alton defendant's motion to compel and Saalfrank's objection to
the version ultimately filed.  The vast majority of the work in
responding to the motion to compel, however, was done by Spear
without Carey's involvement.  "[A] court should not hesitate to

discount hours if it sees signs that a prevailing party has overstaffed a case," particularly where, as here, counsel has not "persuasively described their division of responsibility and need for teamwork." Gay Officers Action League, 247 F.3d at 298-99. The court therefore finds the following 1.5 hours duplicative:

- Carey's 0.3 hours reviewing the draft motion;

- Carey's 0.6 hours reviewing the draft objection;

- Spear's approximately 0.6 hours conferencing with Carey on August 18 and September 17 (estimated from the aggregated number of hours Spear spent on various tasks in responding to the motion on each of those days).

Second, Spear spent 2.5 hours and 3.2 hours "finalizing and filing" Saalfrank's objection and surreply, respectively. But, beginning with his review and analysis of the motion to compel, Spear had spent 11.8 hours working on Saalfrank's objection before he began "finalizing" it (to say nothing of the additional 5.1 hours he spent reviewing and analyzing the draft motion to compel, which was in substance nearly identical to the one eventually filed). Spear likewise spent 8.5 hours working on the sur-reply in some way before "finalizing" it. In addition, filing papers via this court's electronic filing system is hardly a time-consuming process. The court therefore finds that the time Spear expended in finalizing and filing the objection and the surreply was excessive. Cf. Grendel's Den, Inc v. Larkin,

749 F.2d 945, 954 (1st Cir. 1984) (finding time spent to prepare for oral argument excessive in light of time spent preparing briefs).  The court reduces each of those entries to what it considers a reasonable time for finalizing and filing a brief, one hour each, cutting 3.7 hours from the total.

Third, after applying that reduction, Spear spent a total of 11.8 hours working on Saalfrank's surreply.  About half of the surreply, however, dealt with the argument in the Alton defendants' reply that they were entitled to Saalfrank's medical records because he had put his emotional state at issue under Desclos.  Because that argument was substantially justified, see Part II.A.1, Rule 37(a)(5)(B) does not entitle Saalfrank to recover his expenses in responding to it.  Cf. Gay Officers Action League, 247 F.3d at 298 ("When a plaintiff prevails on some, but not all, of multiple claims, a fee reduction may be in order.").  To reflect this, the court will remove half the hours expended in working on the surreply (after the reduction for the excessive time spent to finalize and file it), i.e., 5.9 hours, from the compensable total.

Applying these reductions (1.5 hours for Carey's time, 3.7 hours for finalizing and filing the memoranda, and 5.9 hours in responding to the Alton defendants' one substantially justified argument) leaves a total of 21.4 hours as the "lodestar."  While

the Alton defendants complained at oral argument that the effort Saalfrank's counsel spent in responding to their motion was "excessive," they did not elaborate, except by producing their own billing records to show that they spent considerably less time--only 11.8 hours--working on the motion to compel and their reply memorandum.  In the court's view, however, that tends to suggest not that Saalfrank's counsel spent an unreasonably long time attending to the motion to compel, but that the Alton defendants spent an unreasonably short time at that task.

As discussed at length here and in the Order, the motion to compel simply did not address many of the objections Saalfrank had made to the discovery requests.  This shortcoming, combined with the breadth of information the Alton defendants elected to seek, necessitated a relatively lengthy objection responding to a variety of arguments the motion might have made but did not. While the Alton defendants' reply finally attempted to address most of Saalfrank's objections, it did so by raising other new arguments that had not been made in the motion or anticipated by the objection, necessitating a surreply.  See L.R. 7.1(e)(3).

Moreover, the Alton defendants' failure to serve a formal document request as contemplated by Rule 34, or to attach or incorporate their informal requests and Saalfrank's responses as required by Local Rule 37.1, caused Saalfrank's counsel--and the

27

court, for that matter--to spend time responding to those
failures that otherwise would have been unnecessary.  With the
exception of the particular reductions just discussed, then, the
court finds that Saalfrank's counsel spent a reasonable period of
time responding to the Alton defendants' motion to compel.  As
the court of appeals has observed in a similar context, "[a]fter
setting such a [strident] tone and forcing the plaintiff[] to
respond in kind," the Alton defendants cannot be heard
"to castigate the plaintiff[]" for the "excessive" nature of his
response.  Gay Officers Action League, 247 F.3d at 298; see also
DNPG, 2006 WL 1644598, at *2-*5 (awarding $22,116 as a reasonable
fee incurred in compelling plaintiffs' tax returns, which were
relevant in light of the nature of the action, over their protest
that the sum was "grossly excessive and unreasonable in relation
to the nature of the discovery dispute").

### 2.    The reasonable hourly rate

Having decided the reasonable number of hours expended in
opposing the motion, the court now turns to fixing the reasonable
hourly rate "according to the prevailing market rates in the
community, that is, those prevailing in the community for similar
services by lawyers of reasonably comparable skill, experience
and reputation."  Grendel's Den, 749 F.2d at 955 (internal

28

quotation marks omitted).  Saalfrank, who bears the burden of
proof on this issue, see Holder, 2007 DNH 089, 2, has submitted
an affidavit from Spear stating that, based on his general
familiarity with the rates of attorneys in Concord and
Manchester, the rates charged by his firm "are reasonable and
customary for attorneys with similar experience, background, and
education" to his.  Spear, whose hourly rate is $265, attests
that he has practiced law for nearly 25 years.  And the Alton
defendants have submitted billing records showing hourly rates of
$180 for one of their counsel and $170 for the other.[13]

      "While an attorney may inform the court's analysis by
providing evidence of [his] customary billing rate and of
prevailing rates in the community, the court is not obligated to
adopt that rate.  Moreover, the court is entitled to rely upon
its own knowledge of attorneys' fees in its surrounding area
. . . as well as the defense attorneys' rates."  Andrade v.
Jamestown Hous. Auth., 82 F.3d 1179, 1190 (1st Cir. 1996)
(citations omitted).  Based on these factors, the court concludes

---

      [13]Though counsel for the Alton defendants did not provide
any evidence of their experience and reputation, this court is
personally aware that they both have significant experience
defending civil rights actions in this court and generally enjoy
an excellent reputation.  The same is true of Saalfrank's counsel
and their firm, though their work before this court tends to
encompass complex business cases rather than civil rights
litigation.

that an hourly fee of $190 represents the prevailing hourly rate in this community for similar services by a comparable attorney.

In particular, the court notes that it has regularly found fees in that range reasonable for litigating civil rights claims in this forum.  See, e.g., Donovan v. Whalen, 2008 DNH 088, 12-13;, Holder, 2007 DNH 089, 2-3; Brian M. ex rel. Keith M. v. Litchfield Sch. Dist., 2005 DNH 162, 11-17; Hawkins v. Comm'r, N.H. Dep't of Health & Human Serv., 2005 DNH 085, 19-23; Mr. & Mrs. S. v. Timberlane Reg'l Sch. Dist., 2004 DNH 046, 13-15. While some of these decisions awarded fees at a slightly higher rate, the court notes that those awards covered the entirety of the prevailing attorneys' work on the case, rather than on a discrete and relatively minor part of a litigation, such as the work here in opposing the motion to compel.[14]  A court may take the nature of the services into account in determining the reasonableness of the fee.  See Grendel's Den, 749 F.2d at 956.

The court also notes that, according to a 2004-2005 survey by the New Hampshire Bar Association of its members, between $151 and $175 was the most typical hourly rate charged by attorneys in

---

[14]For this reason, the court's determination of the prevailing rate here is limited to the services provided in opposing the motion to compel; should Saalfrank ultimately prevail on any of his claims entitling him to attorneys' fees, the court will determine the appropriate rate for the services provided over the entirety of the litigation.

Merrimack County, as well as by attorneys of Spear's age.  See
N.H. Bar Ass'n, 2006 Statistical Supplement 4, 11 (2006).  This
court has regularly looked to similar Bar Association
compilations to figure reasonable hourly rates.  See, e.g.,
Access Group, Inc. v. Federico, 2006 DNH 131, 3-4; Silva v. Nat'l
Telewire Corp., 2001 DNH 218, 6-7; accord Grendel's Den, 749 F.2d
at 956 (relying on a similar national publication).  And setting
the rate here at $190, just beyond the upper end of the range,
reflects an appropriate upward adjustment for the passage of time
since the survey, see Federico, 2006 DNH 131, 3-4, as well as for
the high reputation and significant experience of Spear and his
firm, see note 13, supra.  Multiplying the reasonable hourly
rate, $190, by the reasonable number of hours spent opposing the
motion to compel, 21.4, yields an attorneys' fee award of $4,066.

### 3.    Computer-assisted research charges

Saalfrank's counsel has provided records showing that they
incurred electronic research charges of $2,714.98, which
represents approximately 16.25 hours of time using Westlaw's on-
line legal research database to, among other things, download
some 44 cases.  As Saalfrank points out, the court of appeals has
held that "computer-assisted research should be . . . reimbursed
under attorneys' fees statutes . . . so long as the research time

is in fact paid by the firm to a third-party provider and is customarily charged to its clients as a separate disbursement." InvesSys, Inc. v. McGraw-Hill Cos., 369 F.3d 16, 22 (1st Cir. 2004). Spear attests to both. But the court finds that Saalfrank's counsel spent an unreasonable amount of time conducting research on Westlaw in opposition to the motion.

The court recognizes that researching discovery issues can be time-consuming, given the general paucity of circuit court opinions on those subjects. Yet Saalfrank's objection cited a grand total of 11 cases from courts besides this one, the court of appeals, or the New Hampshire Supreme Court (and decisions from those courts can be readily found without paying for computer-assisted research). His surreply cited only a few additional extrajurisdictional cases beyond those cited in his objection or the Alton defendants' reply. This was appropriate in light of the fact that, as the court's Order suggests, the answers to many of the questions presented by the motion to compel could be found in existing New Hampshire case law. Furthermore, based on the court's experience, Westlaw sessions of the length of those reported by Saalfrank's counsel--more than 5 hours on one day, and more than 3 hours on each of two others-- tend to reflect a less-than-optimal use of the resource, particularly by attorneys as experienced as Saalfrank's. The

32

court finds the Westlaw charge reasonably incurred due to the
motion to compel to be only one-third of that actually incurred,
$904.99.  When that sum is added to the $4,066 in reasonable
attorneys' fees, the reasonable expenses incurred by Saalfrank in
opposing the motion total $4,970.99.


### 4.  Against whom to assess the award

Finally, Rule 37(a)(5) provides that the award of expenses
may be assessed against "the movant, the attorney filing the
motion, or both."  The parties have not addressed the question of
who should pay the award here.  At oral argument, however, lead
counsel for the Alton defendants emphasized that, as the senior
attorney, he was prepared to take full responsibility for the
motion to compel, and, given the nature of the motion, the court
has no reason to believe that it was driven by the Alton
defendants themselves rather than by their counsel.  Cf. DNPG,
2006 WL 1644598, at *1 (assessing award against plaintiffs who
"were primarily responsible for causing [the] discovery dispute"
by refusing to produce their tax returns).  The court assesses
the award against the Alton defendants' counsel's law firm.

## IV.  **Conclusion**

Because the court, gratefully, has little occasion to write at this length, and in this detail, about discovery disputes and sanctions, the following additional observations are worth making.  The court takes no pleasure in being called upon to resolve discovery disputes, even less in imposing sanctions, and less still in sanctioning counsel personally with monetary penalties.[15]  In doing so, though, the court's proper role is not to evaluate or pass judgment on counsel's general approaches to discovery, the specific techniques they employ, or their modes of interaction with adverse counsel, and it does not do so here. Litigants aggressively inquire and probe, seeking the path of least resistance to acquiring information helpful to them or damaging to their adversaries.  That is as it should be.  But recipients of such requests may very well object, which implicates a host of additional considerations beyond the potential usefulness of the information at issue.

---

[15]In fact, this court now issues a preliminary pretrial order in all cases requiring that, in the first instance, discovery disputes be resolved through an informal teleconference between the court and counsel, without the filing of a motion to compel and the accompanying threat of fee-shifting.  That practice was not in place when the court conducted the preliminary pretrial conference in this case, however.

Faced with such an objection, the defendants here invoked the court's authority to compel under Rule 37.  By claiming the benefits of that rule, they ran the risk of incurring its burdens--in this case, the express provision that the court "<u>must</u> . . . require the movant, the attorney filing the motion, or both to pay the objecting party's expenses, including attorney's fees unless the motion was substantially justified or other circumstances make an amount unjust."  Under this standard, an argument that "this is the way it has always been done," or stressing one's "good faith," will not do.  The court here does not question counsel's good faith, but good faith is not the standard; the standard is substantial justification.  There is a difference.

So the message here is twofold.  First, while the court does not wish to disturb the robust discovery practices appropriately employed by skilled counsel, those who choose to test those practices <u>in court</u> by moving to compel production under the Federal Rules of Civil Procedure must be prepared to accept Rule 37's burdens, as well as its benefits.  And second, counsel who demonstrate a willingness to live with those burdens by moving to compel must be prepared to do the following:

- demonstrate that they have made a genuine, good faith effort to confer to obtain the discovery

35

without court action, see Fed. R. Civ. P.
37(a)(1); L.R. 7.1(c);

• provide the court with a verbatim recitation of
  the subject request and response (or a copy of the
  subject requests and responses), see L.R. 37.1(a);

• fully disclose to the court any other relevant
  conduct preceding the motion (such as the full
  access to medical records provided, and the
  stipulations offered, by Saalfrank in this case);
  and

• affirmatively assert the grounds (if not the
  authority) supporting the request, not waiting
  until filing a reply brief, or oral argument, to
  raise new or additional grounds that are not
  responsive to adverse counsel's objection, see
  L.R. 7.1(e)(1).

The motion to compel in this case was deficient in not just one
of these respects, but in all of them.  It was the totality of
those deficiencies, more than any judicial reservations about the
Alton defendants' discovery strategy and tactics, contributed to
the denial of the motion to compel and the resulting sanctions.

Based on the foregoing, the court finds that the Alton
defendants motion to compel was not substantially justified, that
no other circumstances exist making the award of expenses unjust,
that Saalfrank's reasonable expenses incurred in opposing the
motion were $4,970.99 in attorneys' fees and Westlaw charges, and
that the award should be imposed against the Alton defendants'
counsel's law firm.  That law firm shall forthwith remit
$4,970.99 to Saalfrank, via his counsel.

36

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  March 5, 2010

cc:  Jeffrey C. Spear, Esq.
     Robert S. Carey, Esq.
     Andrew B. Livernois, Esq.
     Charles P. Bauer, Esq.
     Jeanne P. Herrick, Esq.
     K. Joshua Scott, Esq.
     William G. Scott, Esq.
     Catherine M. Costanza, Esq.
     Brian J.S. Cullen, Esq.
     Tara A. Latour, pro se